UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DAREN DEWANE CAMPODONICA,

    Petitioner,

v.

MATTHEW CATE, *et al.*,

    Defendants.

No. C-10-0297 EMC

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

## I. INTRODUCTION

Petitioner seeks federal habeas relief from his state convictions. For the reasons stated herein, the petition for such relief is **DENIED**.

## II. BACKGROUND

In 2005, a Santa Clara County Superior Court jury convicted Petitioner of second degree murder, consequent to which he was sentenced to 40 years-to-life in state prison. He was denied relief on state judicial review. The state appellate court, which issued the last reasoned decision, affirmed his conviction on direct review. The California Supreme Court summarily denied his petition for direct review and his habeas petitions. This federal habeas petition followed.

Evidence presented at trial demonstrated that Petitioner shot and killed his wife Tarina, whom he had been physically abusing for years. Petitioner testified at trial that he had never abused Tarina, and that she shot herself accidentally during one of their arguments. The state appellate court, in its direct review of Petitioner's conviction, summarized the facts of the incident as follows:

1   [Petitioner] was in the garage working on his car.  Nicole [Petitioner
    and Tarina's daughter] and [Nicole's friend] Betancourt went into
2   Nicole's bedroom.  Betancourt and Nicole could hear [Petitioner] and
    Tarina loudly arguing about a phone bill, and Nicole heard Tarina tell
3   [Petitioner] to be quiet.  Tarina and [Petitioner] continued yelling
    loudly and arguing about [Petitioner]'s girlfriend and Tarina's desire
4   to leave. Tarina was "mad," and she "packed a bag."

5   Nicole was upset that her parents were arguing, and she left her room
    and asked her parents to stop because she had a friend over.  The
6   arguing continued and escalated. Betancourt heard a "bang" on the
    wall that sounded "[l]ike if someone shoved someone real hard on the
7   wall."  Nicole left the room again, and Betancourt heard Tarina say
    "[t]ell your dad to stop choking me." Tarina sounded "scared," and
8   her voice sounded like her air pipe was constricted.  Betancourt heard
    Nicole say "Stop choking Mom. Stop. Stop."  Then Nicole said:  "If
9   you don't stop, I'm going to call the cops."  Betancourt heard
    [Petitioner] say "No."

10  Nicole returned to the room looking scared and crying.  Nicole called
11  a friend to come over and pick up her and Betancourt.  Nicole and
    Betancourt talked for about five minutes, trying to ignore the
12  argument, and then they went outside.  On their way out of the house,
    they did not see or hear Tarina or [Petitioner].  Nicole stopped at the
13  front door and called out to Tarina that she was leaving.  Tarina
    replied: "Okay. Give me a call later."

14  Once they got outside, Betancourt could hear Tarina and [Petitioner]
15  continuing to loudly argue.  Betancourt heard Tarina yell "No.  No.
    Just stop it.  Let it go."  Tarina sounded "really scared."  Betancourt
16  remained outside, but Nicole went back inside the house a few times.
    At one point, after Nicole had gone into the house, Tarina came out of
17  the house.  Betancourt heard [Petitioner] say "If you leave, I'll shoot
    the tires."  As Tarina passed by Betancourt, she told Betancourt that
18  she was sorry Betancourt "had to go through this" and said that
    Betancourt was "a very nice person."  Tarina put her purse in her truck
19  and sat in her truck for a minute or two.  As she walked back toward
    the house, Tarina said "I'm definitely getting a divorce."  Tarina then
20  returned to the house.

21  At some point, Nicole saw [Petitioner] sitting in the garage crying.
    She told [Petitioner] that she would find out where Tarina was going.
22  Tarina, who was angry, told Nicole that she was going to her parents'
    home.  When Nicole returned to [Petitioner], he had a gun in his hand
23  into which he put a clip.  [Petitioner] said "I can't get a divorce."  He
    told Nicole that he was going to shoot the tires of Tarina's truck to
24  prevent Tarina from leaving.  Nicole told him not to do that and to put
    away the gun, and she offered to talk to Tarina.  [Petitioner] put the
25  gun down.

26  Each time Nicole came out of the house, she was crying.  Nicole said
    to Betancourt: "I'm tired of this" and "I hope my mom gets a divorce."
27  At one point, as Nicole came out of the house again, Betancourt could
    hear Tarina say "Stop.  Stop" in a "[s]cared" tone of voice.  Betancourt
28  also heard a noise from the house like something big had fallen.  The

2

> last time Nicole left the house, she saw that [Petitioner] and Tarina were still arguing, [Petitioner] was standing in Tarina's way, trying to prevent her from leaving, and Tarina was telling [Petitioner] to get out of her way.
>
> No more than a minute after Nicole left the house, she and Betancourt heard a gunshot. Nicole said "Oh no. The .22" and ran back into the house. Nicole encountered [Petitioner] at the front door, and he said "Nicole, come here." They went back inside the house, and Nicole followed him to the garage. She saw her mother in the garage lying on her back. [Petitioner], who was crying, got a rag and was holding it to Tarina's neck. Nicole saw [Petitioner] put the gun in or near Tarina's right hand. Nicole ran back outside. [Petitioner] appeared at the entryway to the house, made a phone call and said into the phone "She shot herself. I can't believe I did it. Why is this happening."

(Ans., Ex. G at 5-7.)

As grounds for federal habeas relief, Petitioner claims that (1) his Confrontation Clause rights were violated by use of evidence of statements of his deceased wife; and (2) defense counsel rendered ineffective assistance.

### III.  STANDARD OF REVIEW

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams (Terry) v. Taylor*, 529 U.S. 362, 412–13 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the

facts of the prisoner's case." *Id*. at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Id*. at 409.

## IV. DISCUSSION

A. <u>Confrontation Clause</u>

In 1993, Tarina, who was seeking a restraining order against Petitioner, told a police officer that Petitioner "had a gun and he was dangerous around guns . . . and that she was afraid that he would carry out his threat and shoot her." (Ans., Ex. G at 27.) She also told the officer that Petitioner had "abused her" a few weeks earlier. (*Id.*) This police officer testified at Petitioner's trial regarding these statements.[1] Petitioner claims that admission of Tarina's hearsay statements violated his Confrontation Clause rights because he could not cross-examine her regarding the statements.

The state appellate court on direct review rejected this claim based on the California Supreme Court decision in *People v. Giles*, 40 Cal. 4th 833 (Cal. 2007). Under *Giles*, if a criminal defendant intentionally makes the hearsay declarant unavailable by a criminal act (say by killing the declarant), the defendant has forfeited his Confrontation Clause objections to the unavailable declarant's statements. According to the state appellate court in its opinion on direct review of the case at bar, Petitioner forfeited his confrontation objections by intentionally making Tarina unavailable by the criminal act of killing her. The appellate court relied on *Giles*. (Ans., Ex. G at 21.) The Ninth Circuit has concluded that *Giles* was neither contrary to, nor an unreasonable

---

[1] The trial court admitted the hearsay under the spontaneous statements exception to the hearsay rule. According to the state appellate court, the first statement was properly admitted as a spontaneous statement, Tarina being "still under the stress of excitement caused by [Petitioner's] threat the previous day." (Ans., Ex. G at 28.) The second statement, however, was not admissible under this exception. Yet, no prejudice ensued because another witness had testified that she had seen Petitioner "abuse Tarina in this same time period." The second statement was, then, merely cumulative. (*Id.*)

1  application of, clearly established federal law. *Ponce v. Felker*, 606 F.3d 596, 605 (9th Cir. 2010).
2  Hence, the state appellate court's rejection of Petitioner's Sixth Amendment argument does not
3  qualify for habeas relief under § 2254(d).

4  Petitioner counters that because *Giles* was invalidated by the United State Supreme Court
5  and a new rule created, the state appellate court's determination was constitutionally erroneous.
6  Petitioner is correct that *Giles* has been invalidated. *Giles v. California*, 554 U.S. 353, 376–77
7  (2008). However, the invalidation does not apply to Petitioner's case because his conviction became
8  final (April 15, 2008) before *Giles v. California* was issued (June 25, 2008).[2] *Ponce*, 606 F.3d at
9  604 ("We hold that *Giles* [*v. California*] does not apply retroactively to state court convictions that
10 became final before the Supreme Court issued *Giles* [*v. California*]").

11 Furthermore, there is no showing of prejudice, and thus, Petitioner would not be entitled to
12 relief even if the Confrontation Clause had been violated. Confrontation Clause claims are subject
13 to harmless error analysis. *See United States v. McClain*, 377 F.3d 219, 222 (2d Cir. 2004). In the
14 context of reviewing a state court conviction under 28 U.S.C. § 2254, this means that relief is in
15 order only if the admission at issue "had substantial and injurious effect or influence in determining
16 the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993).

17 Relief is precluded here by the strength of the evidence supportive of Petitioner's guilt, and
18 by the fact that Tarina's statements were cumulative of other evidence presented at trial. There was
19 strong evidence of Petitioner's guilt. First, there was the testimony of Nicole, Petitioner and
20 Tarina's daughter. On the day of Tarina's death, Nicole heard her parents quarreling intensely. At
21 one point, she heard her mother yell, "Tell your dad to stop choking me."[3] Later, Nicole saw her
22 father, who testified that he had smoked methamphetamine before the killing, putting a clip into a
23 gun while saying, "I can't get a divorce." He then said that he was going to shoot Tarina's car tires

---

[2] The California Supreme Court denied Petitioner's petition for direct review on January 16, 2008. (Ans., Ex. K) Petitioner did not petition for review in the United State Supreme Court. His conviction, then, became final 90 days later (April 15, 2008), that is, when time passed for him to seek review in the United State Supreme Court. *Zepeda v. Walker*, 581 F.3d 1013, 1016 (9th Cir. 2009). This is clearly before *Giles v. California* was issued (June 25, 2008).

[3] In addition to Nicole's testimony, there was physical evidence that Tarina had been strangled. (Ans., Ex. B at 491.)

so she could not leave.  Later that day, Nicole heard a gunshot.  She came upon her mother lying on her back while Petitioner held a rag to her neck.  Nicole then saw her father place the gun in or near Tarina's right hand.  Nicole's testimony was corroborated by family friends who testified that they heard Nicole describe what she had seen and heard that day.  (Ans., Ex. G at 6–7.)

Second, there was physical evidence regarding the gun and the gunshot injury.  As to the gun, the only usable fingerprint on it was Petitioner's, and gunshot residue was found, along with blood stains, on his jeans.[4]  As to the injury itself, it would have would have required a "very uncomfortable" and "contorted maneuver" for Tarina to fire the gun to make the bullet pass through the bottom of her earlobe into her neck, six inches below the top of her head.  Based on the copious evidence that Petitioner murdered Tarina, it is clear that her hearsay statements did not have a substantial and injurious effect or influence in determining the jury's verdict.  (*Id.* at 9.)

Relief is also precluded here because Tarina's statements were cumulative.  Over ten witnesses testified that they had observed Petitioner physically abuse Tarina and threaten to kill her, and that she had repeatedly said that she was afraid that Petitioner would kill her.  On such a record, the additional testimony of the police officer cannot have had substantial and injurious effect or influence in determining the jury's verdict.  Accordingly, this claim is DENIED.

B.  <u>Assistance of Counsel</u>

Petitioner claims that defense counsel rendered ineffective assistance by failing to   (A) conduct an adequate pretrial investigation, and (B) interview and call an available exculpatory witness to testify.

In order to prevail on a Sixth Amendment ineffectiveness of counsel claim, a habeas Petitioner must establish two things.  First, he must establish that counsel's performance was deficient, *i.e.*, that it fell below an "objective standard of reasonableness" under prevailing professional norms.  *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984).  Second, he must establish that he was prejudiced by counsel's deficient performance, *i.e.*, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have

---

[4] No gunshot residue was found on Petitioner's hands.  (Ans., Ex. G at 9.)

been different." *Id.* at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 131 S. Ct. 770, 792 (2011) (citing *Strickland*, 466 U.S. at 693).

1. <u>Trial Preparation</u>

Petitioner claims that defense counsel failed to conduct an adequate investigation, thus failing to sufficiently prepare for trial. He contends that "further examination would have yielded exculpatory evidence that: (1) would plausibly refute the prosecutor's theory that petitioner shot his wife in the back, when she turned to 'leave' him; and (2) would support and corroborate the plausibility of petitioner's account of how the gun discharged during petitioner['s] and his wife's struggle over it, of which she had produced in the first place." (Pet. at 31–32.)

The first part of the claim is without merit. Petitioner has pointed to no evidence to support his assertion. The evidence that exists points in the oppositive direction. The prosecutor's theory was *not* that Petitioner shot his wife in the back. Rather, the prosecutor asserted that Petitioner held the muzzle of the gun against her ear and neck and fired. (Ans., Ex. B at 480, 496–505, 1452–53, 2078, 2088.) Because it was unnecessary to find evidence to refute a nonexistent prosecution theory, Petitioner has not shown a deficient performance, nor prejudice. Also, Petitioner's assertion, even if supported by the record, in no way overcomes the highly inculpatory physical and testimonial evidence described above.

The second part of the claim is also without merit. First, Petitioner contends that blood splattering contradicted the coroner's testimony that Tarina was shot at close range. This assertion is defeated by the fact that Petitioner agreed that she was shot at close range. Second, Petitioner claims that defense counsel failed to make more of the fact that no gunshot residue was found on his hands, and that the residue found on his jeans arrived there when he touched his jeans after touching Tarina's wound.[5] However, Petitioner has not shown what evidence would have undermined the prosecutor's explanation that any gunshot residue may well have been removed during the 15 times

---

[5] Petitioner also contends that it was not emphasized that Tarina had gunshot residue on her hands, and therefore that there was evidence she shot herself. Such evidence was presented at trial, and the jury was able to consider it. On such facts, petitioner has not shown ineffective assistance, and such claim is DENIED.

1  Petitioner wiped his hands prior to their being tested.  As such, Petitioner has not shown either a
2  deficient performance or prejudice.  Furthermore, as noted above, Petitioner has not seriously
3  undermined the strength of the evidence, both testimonial and physical, that supported his guilt.
4  Accordingly, this claim is DENIED.

### 2. Witness

Petitioner claims that defense counsel rendered ineffective assistance by failing to call the medical examiner who actually performed the autopsy, Dr. Gregory Schmunk, to testify.  Another medical examiner, Dr. Judy Melinek, who had worked with Schmunk, testified regarding Tarina's autopsy.

This claim lacks merit.  Petitioner offers conclusory allegations and undetailed speculation that Schmunk would have provided exculpatory evidence.  Such conclusory allegations are insufficient to show a deficient performance or prejudice, especially considering the strength of the evidence against Petitioner.  The few specifics he does provide were all issues raised and addressed at trial through the examination of witnesses.  He has made no showing that Dr. Schmunk would have added anything of value. Accordingly, this claim is DENIED.

### 3. Other Errors

Petitioner alleges that the cumulative effect of all defense counsel's errors resulted in prejudice.  As Petitioner has been unable to show a deficient performance in any respect, he cannot show that there was cumulative error.  This claim is DENIED.

Many of Petitioner's assertions are in truth assertions that the prosecution's witnesses or other evidence were not credible, or pointed to a different interpretation (such as that Tarina shot herself).  Put another way, Petitioner asserts that the jury should have believed his defense rather than the prosecution's case.  This claim is in essence a challenge to the jury's credibility determination in favor of the prosecution.

A jury's credibility determinations, however, are entitled to near-total deference.  *Jackson v. Virginia*, 443 U.S. 307, 326 (1979).  Indeed, if confronted by a record that supports conflicting inferences, such as the instant case, a federal habeas court "must presume — even if it does not affirmatively appear in the record — that the trier of fact resolved any such conflicts in favor of the

prosecution, and must defer to that resolution." *Id.* Viewing Petitioner's arguments under this standard, this Court must defer to the jury's credibility determination in favor of the prosecution's arguments and evidence, and its rejection of Petitioner's defense. Accordingly, this claim is DENIED.

## V. CONCLUSION

The state court's adjudication of Petitioner's claim did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, nor did it result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Accordingly, the petition is **DENIED**.

A certificate of appealability will not issue. Reasonable jurists would not "find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Petitioner may seek a certificate of appealability from the Court of Appeals.

The Clerk shall enter judgment in favor of Respondents, and close the file.

IT IS SO ORDERED.

Dated: December 18, 2012

_____
EDWARD M. CHEN
United States District Judge